UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GILBER ALEXANDER ANDURAY-SANCHEZ | CIVIL ACTION NO. 1:26-0213 |
| | SECTION P |
| VS. | |
| | JUDGE ROBERT R. SUMMERHAYS |
| SCOT LADWIG, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Petitioner Gilber Alexander Anduray-Sanchez,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 11]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Guatemala. [doc. # 1, p. 2]. He entered the United States of America in June 2021. *Id.* at 6. He was first detained on January 5, 2026. *Id.* The same day, "A Notice to Appear was filed with the Immigration Court at Jena, Louisiana, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i)[present without admission or parole][and/or 8 U.S.C. § 1182(a)(7)(i)(I)]." *Id.*

---

[1] Petitioner's "A Number" is 221-440-855.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner filed this proceeding on January 25, 2026.  He primarily claims: "Petitioner is being unlawfully detained because the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) of the Department of Justice (DOJ) have erroneously concluded he is subject to mandatory detention, and not eligible for bond."  *Id.*  He explains, "This case concerns whether Petitioner may be detained with a right to a bond hearing pursuant to Section 1226(a) (as the law requires) or whether he falls within mandatory detention as an 'arriving alien' under Section 1225(b)(2) as DHS policy erroneously requires."  *Id.* at 12.  He also claims that the Government is violating his right to procedural due process.  *Id.* at 22.

Respondents opposed the petition on February 27, 2026.  [doc. # 11].  They argue, "The Fifth Circuit held that § 1225(b)(2)(A) mandates detention of all applicants for admission."  *Id.* at 2.  They also argue, "Procedural due process does not entitle Petitioners to a bond hearing to determine facts that are irrelevant to § 1225(b)(2)(A)."  *Id.*

Petitioner filed a reply on March 5, 2026.  [doc. # 12].  He primarily contends: "Even assuming *Buenrostro* controls certain statutory interpretation questions concerning detention under 8 U.S.C. § 1225(b)(2), it does not resolve the independent constitutional question presented in Petitioner's habeas petition: whether the Government may detain a long-settled interior resident without providing an individualized custody determination.  That constitutional claim remains squarely before this court.  Respondents are therefore not entitled to judgment as a matter of law."  *Id.* at 2.

On April 23, 2026, an immigration judge ordered Petitioner removed from the United States.  *See* https://acis.eoir.justice.gov/en/caseInformation (last visited April 24, 2026).

**<u>Law and Analysis</u>**

**I. 8 U.S.C. § 1225 Versus 8 U.S.C. § 1226**

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to a bond hearing. The Court should dismiss his statutory claim accordingly.

**II. Due Process**

Petitioner claims that the Due Process Clause entitles him to a bond hearing. In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus

petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum.  In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause.  Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens.  Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  140 S. Ct. at 1977.

In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute.  Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights.  In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In *Zadvydas*, two aliens were held pending removal after final order of deportation.  However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a).  The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported.  *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent."  Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing.  *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that

process.").[3]  As in *Ford*, Petitioner's detention is not indefinite or potentially permanent.  An immigration judge ordered him removed on April 23, 2026, and Petitioner still has time to appeal.  Any appeal will likely extend his detention until the BIA decides his appeal.  Petitioner's detention will likely end (i) when his order of removal becomes final and the Government removes him or (ii) if the BIA rules in Petitioner's favor (if Petitioner chooses to appeal).  Accordingly, the Court should deny Petitioner's claim.

**III. Class Action**

Petitioner claims that his he is a member of the class in "*Maldonado Bautista et al. v. Ernesto Santacruz Jr. et al.*, No. 5:25-CV-01873-SSSBFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)."  [doc. # 1, p. 3].

In *Bautista*, the court found that persons like Petitioner meeting certain identified requirements are "Bond Eligible."  However, one district judge in this district previously rejected this conclusion.  *See Mendoza v. Rice,* Civil Action No. 1:26-0058 (W.D. La. Jan. 14, 2026) [doc. #6, pp. 10-19] (Doughty, J.).  Another district judge likewise opined:

> [T]he reasoning undergirding [*Bautista*] was expressly rejected by a panel of the Fifth Circuit.  *Compare Buenrostro-Mendez*, 166 F.4th at 502–08 *with Guerrero-Orellana*, No. 1:25-cv-12664-PBS, at ECF No. 112 *and Maldonado Bautista*, No. 5:25-cv-1873-SSS, at ECF No. 116. Because Petitioner is an inadmissible alien who is an "applicant for admission," § 1225(b) applies to her; therefore, she "shall be detained for a proceeding under [§] 1229a." 8 U.S.C. § 1225(b)(2)(A).

*Ramirez v. Harper, et al.*, No. CV 26-386 SEC P, 2026 WL 1067923, at *1 (W.D. La. Apr. 20, 2026).  The undersigned agrees with the judges' opinions above.  Accordingly, the Court should dismiss this claim.

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

## IV. Procedural Due Process

Citing *Mathews v Eldridge*, 424 U.S. 319, 335 (1976), Petitioner claims that absent a bond hearing, Respondents are violating his right to procedural due process. [doc. # 12, p. 6].

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

6

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Living in the United States for approximately 5 years (albeit, not on parole, bond, or other supervision), Petitioner established a liberty interest. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not). According to Petitioner, "This detention prevents him from supporting himself, meaningfully assisting counsel in the presentation of his applications for removal relief, and deprives him of any privacy and freedom of movement." [doc. # 1, p. 23]. He "worked in construction, and became engaged to be married, before being detained." *Id.* at 24. At bottom, he established his life in this country. Terminating his valued liberty likely inflicted a grievous loss. *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty

interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[4] That said, Petitioner always knew that he was in the United States without permission, which qualifies his liberty to a degree.[5]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor. Petitioner does not offer any reason why not providing process to him before he was detained—i.e., before the Government terminated his liberty interest—risked error. The Government has provided process after detaining him in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal. He has received opportunities to be heard on relevant issues such as his identity, whether he is "an alien present in the United States who has not been admitted or paroled,"[6] whether he possessed a "valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document," the country of which he is a citizen, the country or countries which might accept him, when he entered the country, and whether he is entitled to asylum or other protection.

Petitioner appears to seek only post-deprivation process in the form of a bond hearing. He states: "No Immigration Judge has evaluated whether Mr. Anduray-Sanchez poses a flight

---

[4] Of note, some courts have even held that a convicted prisoner mistakenly released from federal prison is entitled to procedural due process in the form of a hearing before reincarceration. *See, e.g.*, *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017).

[5] *See generally Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) ("A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom.").

[6] [doc. # 11-1, p. 1].

risk or danger to the community.  Instead, detention rests on categorical statutory interpretation, rather than individualized assessment." [doc. # 12, p. 8].  From what the undersigned can glean, he appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society.  However, as explained above Respondents are statutorily required to detain him under 8 U.S.C. § 1225.  Thus, even if a 'neutral decisionmaker' determined that he was not a flight risk or a danger, Respondents would still detain him.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published.  The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6.  Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*"  *Id.* at 8 (emphasis added).  Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders.  *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain him and remove him.[7]  Relevant issues, for example, include his identity, citizenship, whether he was ever

---

[7] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding."  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).  Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that he is entitled to release for urgent humanitarian reasons or for significant public benefit.  And even if he did, he had and has the opportunity to present such a contention in his removal proceedings.  *If* the Secretary of Homeland Security

admitted or paroled, when he entered this country, and whether he is entitled to protection from removal. And as explained above the Government has already provided process for these issues. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Petitioner does not claim that the Government failed to provide him process before detaining him and terminating his liberty interest. In this respect, and as explained above, the Government has provided him post-deprivation process in the form of notice and opportunities to be heard and to respond. All of this is to say that there is little, if any, risk of error in terminating his liberty without providing him a post-deprivation bond hearing.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Petitioner eluded immigration authorities for approximately 5 years, demonstrating that he is a possible flight risk. Thus, affording him a bond hearing could burden the Government's interest in preventing flight. And out of caution and even assuming Petitioner sought pre-deprivation process, providing it to him and others who entered the United States

---

agreed, *then* Petitioner could attempt to demonstrate that he is neither a security risk nor a risk of absconding.

without permission—i.e., providing notice of the intent to detain them *before* detaining them—would create an appreciable risk of evasion before arrest/detention.

Accordingly, the Government has not violated Petitioner's right to procedural due process.  The Court should dismiss this claim.

**<u>Recommendation</u>**

For reasons above, **IT IS RECOMMENDED** that Petitioner Gilber Alexander Anduray-Sanchez's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

11